NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHRISTOPHER ALFRED,<br><br>Defendant. | Cr. No. 18-12<br><br>**OPINION** |

THOMPSON, U.S.D.J.[1]

# **INTRODUCTION**

This matter comes before the Court on the Motion to Dismiss brought by Defendant Christopher Alfred ("Defendant"). (ECF No. 35.) The United States of America (the "Government") opposes. (ECF No. 41.) The Court has decided the Motion based on the written submissions of the parties and oral argument held on May 6, 2019 (ECF No. 48). For the following reasons, Defendant's Motion to Dismiss is denied.

# **BACKGROUND**

Defendant, a noncitizen but admitted in the United States as a Lawful Permanent Resident, was convicted of money laundering and conspiracy to commit money laundering on November 28, 2011. (NTA at 1, ECF No. 50-1.)[2] As a result, Defendant entered removal proceedings in January 2012, and he was served with a Notice to Appear ("NTA") on February

---

[1] The Honorable Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.
[2] The Government initially filed an NTA that omitted information on the certificate-of-service portion (*see* ECF No. 41-1), but it subsequently filed this NTA with that information completed (*see* NTA at 2).

1

6, 2012. (*Id.*)³ The NTA with which he was served indicated that both the date and time of the removal hearing was "to be set."

On April 29, 2014, Defendant was served with a Notice of Hearing ("NOH") stating that Defendant's removal hearing was scheduled for 2:00 PM on May 6, 2014. (NOH at 1–2, ECF No. 41-2.) On that date, a removal hearing was held and the immigration judge (the "IJ") ordered Defendant to be removed from the United States to Trinidad & Tobago, where he is a citizen. (Removal Order at 1–2, ECF Nos. 35-5, 41-3.) The Removal Order indicates that Defendant elected to waive his right to appeal this decision. (*See id.*) On this same date, Defendant received a Warning to Alien Ordered Removed or Deported, which Defendant signed, cautioning that Defendant was prohibited from entering, attempting to enter, or being in the United States "[a]t any time because [he] ha[d] been . . . convicted of a crime designated as an aggravated felony." (Warning, ECF No. 41-4.) Defendant was then removed from the United States on June 27, 2014. (Indictment at 1, ECF No. 1.)

On May 15, 2018, the Government issued a one-count Indictment alleging that Defendant unlawfully reentered the United States on January 11, 2018 in violation of 8 U.S.C. § 1326. (Indictment at 1.) Section 1326 prohibits any alien who has been removed from thereafter entering the United States without the Attorney General's prior and express consent. Defendant was arrested on June 1, 2018 (ECF No. 10), and he entered a plea of not guilty on June 6, 2018 (ECF No. 12). He was released on bond that same day. (ECF No. 14.)

On January 28, 2019, Defendant filed the instant Motion to Dismiss. (Mot. at 1, ECF No. 35.) Defendant collaterally attacks, pursuant to 8 U.S.C. § 1326(d), his underlying removal order

---

³ By all indication, the Government served Defendant in person on this date, but the certificate of service asserts that Defendant refused to sign acknowledging such service. (*See* NTA at 2.)

because it failed to comport with due process. (*See id.*) Defendant, relying on a recent case from the Supreme Court of the United States, *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), contends that because the NTA that was issued in January 2012 failed to state the date and time of his removal hearing, the IJ lacked jurisdiction to conduct the hearing and ultimately order removal. (*Id.*) This case was reassigned to the Honorable Anne E. Thompson on February 1, 2019. (ECF No. 36.) The Government opposed the Motion on February 19, 2019 (Gov't Br. at 1, ECF No. 41), and the Court heard oral argument on May 6, 2019 (*see* ECF No. 48). The Motion to Dismiss is currently before the Court.

## **LEGAL STANDARDS**

### I.     Motion to Dismiss the Indictment

Rule 12(b) of the Federal Rules of Criminal Procedure authorizes dismissal of an indictment if its allegations do not suffice to charge an offense. *United States v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir. 2000). "[I]n considering a defense motion to dismiss an indictment, the district court [must] accept[] as true the factual allegations set forth in the indictment." *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (alterations in original). "The sole function of a motion to dismiss is to test the sufficiency of the indictment to charge an offense. It is not a device for a summary trial of the evidence." *United States v. Clark*, 123 F. Supp. 2d 314, 317 (D.V.I. 2000).

### II.    Collateral Attack on the Underlying Removal Order

Generally, a defendant charged with unlawful reentry may not challenge the validity of his or her underlying deportation or removal order—a challenge also referred to as a "collateral attack." However, 8 U.S.C. § 1326(d) provides a limited exception. In order to successfully attack the prior deportation or removal order, the defendant has the burden to prove "three

distinct but compulsory requirements": that (1) "he exhausted any administrative remedies that may have been available; (2) the hearing effectively eliminated the right of the alien to obtain judicial review from that proceeding; and (3) the prior hearing was 'fundamentally unfair.'" *United States v. Charleswell*, 456 F.3d 347, 351 (3d Cir. 2006); *see also* § 1326(d)(1)–(3). "In measuring whether an alien's removal proceeding was 'fundamentally unfair,' [the inquiry is] whether the alien was denied due process." *United States v. Torres*, 383 F.3d 92, 103 (3d Cir. 2004). "[F]undamental fairness is a question of procedure." *Id.* "[A]n alien must show not only that the underlying proceeding suffered some fundamental defect, but also that the result of the defect was prejudicial." *Charleswell*, 456 F.3d at 358.

## **DISCUSSION**

Defendant collaterally attacks his underlying removal order by arguing that his prior hearing was "fundamentally unfair" pursuant to § 1326(d)(3). He contends that the NTA issued in January 2012 was deficient because it failed to designate a date and time for his removal hearing and, thus, the IJ who ordered Defendant's removal in May 2014 lacked jurisdiction to do so. (*See* Mot. at 3–6.) Defendant relies primarily on *Pereira*, a recent case issued by the Supreme Court. Additionally, Defendant submits that he "need not show that he exhausted administrative remedies [pursuant to § 1326(d)(1)] because the immigration court proceedings were void." (Mot. at 6.)

**I.** *Pereira* **and Its Holding**

In *Pereira*, the Supreme Court did not address whether an NTA lacking the "time and place" of the removal hearing divests an IJ of jurisdiction; rather, the Court addressed a particularly "narrow question": "If the Government serves a noncitizen with a document that is labeled 'notice to appear,' but the document fails to specify either the time or place of the

4

removal proceedings, does it trigger the stop-time rule?" 138 S. Ct. at 2110. The Attorney General has the discretion to "cancel removal" of a nonpermanent resident if the individual has been physically present in the United States for a continuous period of not less than ten years. *Id.* The stop-time rule provides that any period of continuous physical presence in the United States shall be deemed to end when the alien is served an NTA that comports with § 1229(a). *Id.* (citing § 1229b(d)(1)(A)). In *Pereira*, the Court held that an NTA failing to designate the time or place of the noncitizen's removal proceedings, as outlined in § 1229(a), is insufficient to trigger the stop-time rule. *See id.* at 2113–15 ("[I]n this context, [notice to appear] must mean that, at a minimum, the Government has to provide noncitizens 'notice' of the information, *i.e.*, the 'time' and 'place,' that would enable them 'to appear' at the removal hearing in the first place."). The Court did not address jurisdiction or how the holding would impact issues other than the stop-time rule.

## II.     Statutory and Regulatory Provisions Regarding the IJ's Jurisdiction

Section 1229 is "silent as to the jurisdiction of the Immigration Court." *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019) (citing § 1229). Instead, the Attorney General has promulgated regulations governing when jurisdiction vests with the Immigration Court: "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the [Department of Homeland Security]." 8 C.F.R. §§ 1003.14, 1001.1(c). The regulations define "charging document" as "the written instrument which initiates a proceeding before an Immigration Judge" which includes, among other things, NTAs. 8 C.F.R. § 1003.13. Although the statute requires that the alien shall be given "written notice" of "[t]he time and place at which the proceedings will be held," § 1229(a)(1)(G)(i), a regulation, titled "Contents of the Notice to Appear for Removal

5

Proceedings," enumerates five requirements, none of which includes "time and place," *see* 8 C.F.R. § 1003.15(c).[4] Rather, the regulations compel inclusion of "the time, place and date of the initial removal hearing, *where practicable*." 8 C.F.R. § 1003.18(b) (emphasis added). The regulations go on to provide, "If that information is not contained in the [NTA], the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." *Id.*

The Board of Immigration Appeals (the "BIA") subsequently issued a decision interpreting the regulations outlined above and addressing the precise argument at issue in the instant Motion. In *Matter of Bermudez-Cota*, the BIA found that

> [an NTA] that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a [NOH] specifying this information is later sent to the alien. As noted, *Pereira* is distinguishable and did not address this issue. Because the respondent received proper notice of the time and place of his proceeding when he received the [NOH], his [NTA] was not defective.

27 I. & N. Dec. 441, 443, 447 (B.I.A. Aug. 31, 2018). The BIA distinguished *Pereira* because, in *Pereira*, the alien did not receive a subsequent NOH notifying him of the hearing, the alien

---

[4] That regulation, in whole, provides as follows:

> In the Notice to Appear for removal proceedings, the [Department of Homeland Security] shall provide the following administrative information to the Immigration Court. Failure to provide any of these items shall not be construed as affording the alien any substantive or procedural rights.
>
>   (1) The alien's names and any known aliases;
>   (2) The alien's address;
>   (3) The alien's registration number, with any lead alien registration number with which the alien is associated;
>   (4) The alien's alleged nationality and citizenship; and
>   (5) The language that the alien understands.

8 C.F.R. § 1003.15(c).

6

sought cancellation of removal pursuant to the stop-time rule, and the Court did not address when jurisdiction vests with the Immigration Court. *See id.* at 443–44. *Bermudez-Cota*—an interpretation of the BIA's own regulations—is given deference "unless plainly erroneous or inconsistent with the regulation[s]." *See Kaplun v. AG of the United States*, 602 F.3d 260, 265 (3d Cir. 2010) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)); *see also Hernandez-Perez v. Whitaker*, 911 F.3d 305, 313 (6th Cir. 2018) ("Because Congress did not address ['when or how jurisdiction vests with the [IJ]—or, more specifically, denote which of the several requirements for NTAs listed in § 1229(a)(1) are jurisdictional'], the agency had some discretion in fashioning a set of jurisdictional requirements." (citing *Vt. Yankee Nuclear Power Corp. v. NRDC, Inc.*, 435 U.S. 519, 543 (1978))).

## III. Other Courts in the Wake of *Pereira*

At the outset, it must be emphasized that the Third Circuit has provided no guidance on this precise issue. As far as this Court can tell, the Third Circuit has issued only two post-*Pereira* decisions. *See Manzano v. AG United States*, 2019 U.S. App. LEXIS 8876 (3d Cir. Mar. 22, 2019); *De Jesus v. AG United States*, 756 F. App'x 136 (3d Cir. 2018). A similar argument was raised in *Manzano*, but the Third Circuit

> decline[d] the invitation to assess the impact of *Pereira*, other than to note the Supreme Court's decision was a "narrow" one, addressing what information must be contained in a [NTA] in order to trigger the "stop-time" rule applicable when a petitioner seeks cancellation of removal pursuant to 8 U.S.C. § 1229b—an issue far afield from the due process violations alleged in [this] petition.

2019 U.S. App. LEXIS 8876, at *12–13 (citing *Pereira*, 138 S. Ct. at 2110).

Defendant provides citations to district courts in Arizona, Nevada, Texas, and Washington, dismissing indictments charging unlawful reentry because an incomplete NTA, lacking the date and time of the removal hearing, stripped the IJ of its jurisdiction over the

matter.[5] And other district courts have issued similar decisions enlarging the shadow of *Pereira*. *See United States v. Ruiz-Gomez*, 2019 U.S. Dist. LEXIS 67594, at *8–9 (D.N.M. Apr. 22, 2019) (collecting cases from District of Arizona, District of Nevada, Southern District of Texas, Western District of Texas, District of North Dakota, Eastern District of Washington).

Numerous courts of appeals, however, have rejected this precise argument. *See Leonard v. Whitaker*, 746 F. App'x 269, 269 (4th Cir. 2018) (per curiam) (concluding "that the narrow holding of *Pereira* does not apply in this situation" to divest the IJ of jurisdiction); *United States v. Perez-Arellano*, 2018 U.S. App. LEXIS 35302, at *3 (4th Cir. Dec. 17, 2018) ("Simply put, *Pereira* did not address the question of an [IJ]'s jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of the 2004 removal proceeding."); *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 146 n.1 (5th Cir. 2018) (holding that *Pereira* is limited to the cancellation of removal context); *Santos-Santos v. Barr*, 917 F.3d 486, 490 (6th Cir. 2019) ("No references to the time and place of the hearing [in an NTA] are required to vest jurisdiction under the regulation."); *Hernandez-Perez*, 911 F.3d at 315 (characterizing *Pereira* as an "emphatically 'narrow' framing of the question presented" and finding that "jurisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing is provided in a [NOH] issued after the NTA" (internal citation omitted)); *Karingithi*, 913 F.3d at 1159 ("Because the charging document in this case satisfied the regulatory requirements, we conclude the [IJ] had jurisdiction over the removal proceedings."). Because courts of appeals in the Fifth and Ninth Circuits, specifically, have rejected this argument, the

---

[5] *See* Mot. at 5 (citing *United States v. Erazo-Diaz*, 353 F. Supp. 3d 867 (D. Ariz. 2018); *United States v. Soto-Mejia*, 356 F. Supp. 3d 1053 (D. Nev. 2018); *United States v. Rodriguez-Rosa*, 2018 U.S. Dist. LEXIS 214623 (D. Nev. Dec. 11, 2018); *United States v. Pedroza-Rocha*, 2018 U.S. Dist. LEXIS 178633 (W.D. Tex. Sep. 21, 2018); *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164, 1165 (E.D. Wash. 2018)).

district courts upon which Defendant relies, located in these Circuits (*see supra* note 5), lack any strength or persuasiveness. And notably, this Court was unable to find a single court-of-appeals decision in support of Defendant's position.

Furthermore, district courts in this Circuit—though courts in the District of the Virgin Islands have been silent on the issue—have also favored the Government's position in regard to this precise argument. In *United States v. Castro-Molina*, 2019 U.S. Dist. LEXIS 62652 (E.D. Pa. Apr. 9, 2019), for example, the court concluded that the BIA's decision in *Bermudez-Cota*, interpreting when jurisdiction vests in an IJ, was not in conflict with the statutory scheme and was entitled to *Auer* deference for five primary reasons: (1) "the BIA's interpretation is harmonious with an ambiguous regulatory provision" as "[n]owhere in section 1003.14(a), or the related provision defining an NTA or discussing case scheduling, do the regulations state that an imperfect NTA divests jurisdiction"; (2) "the holding in *Pereira* does not mandate its extension outside of the unique context of the 'stop-time' rule"; (3) "the statutory text contemplates that, in some contexts, an alien may receive only oral notice of their hearing's 'time and place'" (citing 8 U.S.C. § 1229a(b)(7)), yet that section does not divest the IJ of jurisdiction; (4) "courts analyze defects in an NTA to determine whether the alien received defective notice . . . not whether the deficient NTA divested jurisdiction of the IJ," which occurred in *Pereira* when the Supreme Court merely remanded the proceeding instead of dismissing it; and (5) "extending *Pereira*'s definition of an NTA to the jurisdictional provisions in the regulations would have unusually broad implications because almost 100 percent of NTAs issued during the three years preceding *Pereira* did not include the time and date of the proceeding." *See Castro-Molina*, 2019 U.S. Dist. LEXIS 62652, at *12–18 (internal quotations omitted); *see also United States v. Gamez*, 2019 U.S. Dist. LEXIS 55323, at *5 (E.D. Pa. Mar. 28, 2019) (holding that the underlying

removal order was not invalid for lack of jurisdiction in part because "[h]ad the Supreme Court determined that the [IJ] did not have jurisdiction over *Pereira*'s removal proceedings, it was obligated to consider the issue *sua sponte*, and it did not do so"). The court also identified many other district-court opinions that have reached a similar conclusion. *See Castro-Molina*, 2019 U.S. Dist. LEXIS 62652, at *18 n.15 (collecting cases).

## IV. Defendant Fails to Satisfy § 1326(d)

"Fundamental precepts of due process provide an alien subject to illegal re-entry prosecution under 8 U.S.C. § 1326 with the opportunity to challenge the underlying removal order under certain circumstances." *Charleswell*, 456 F.3d at 351. However, Defendant has the burden to prove all three prongs under § 1326(d): (1) exhaustion of administrative remedies, (2) deprivation of the right to obtain judicial review, and (3) the prior hearing was "fundamentally unfair." For the following reasons, Defendant fails to carry his burden.

### A. *Defendant's Underlying Removal Order Was Not Fundamentally Unfair*

Although Defendant provides some citations to support his position, the universe of authority on this precise issue overwhelmingly favors the Government's position and persuades this Court to find the same here. First, the relevant regulations do not require NTAs to specify date and time in order for jurisdiction to vest; notably, they do not even hint at divestment of jurisdiction. *See* § 1003.15(c) (Contents of the Notice to Appear for Removal Proceedings); *supra* note 4. On the contrary, the regulations actually contemplate NTAs lacking the removal hearing's date and time. *See, e.g.*, § 1003.18(b) (compelling inclusion of date and time on NTA "where practicable" and providing that "[i]f that information is not contained in the [NTA], the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing").

Second, in *Bermudez-Cota*, the BIA issued a decision interpreting its own regulation and found that "[an NTA] that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a [NOH] specifying this information is later sent to the alien." 27 I. & N. Dec. at 447. This Court hereby adopts the reasoning that the *Castro-Molina* court expounded and finds that the BIA's interpretation of when jurisdiction vests in an IJ warrants *Auer* deference. *See Castro-Molina*, 2019 U.S. Dist. LEXIS 62652, at *12–18; *supra* pp. 9–10.

Finally, the Court is generally skeptical that *Pereira* should be stretched to fit the edges of this case. The Supreme Court in *Pereira* stressed the importance of notifying the noncitizen of the "time and place" of a removal hearing for purposes of applying the time-stop rule in cancellation of removal proceedings. The Court seemed concerned about "[t]he consequences of a noncitizen's failure to appear at a removal proceeding," fearing the result of an *in absentia* removal order. *See Pereira*, 138 S. Ct. at 2111. But it did not contemplate whether a subsequent NOH specifying "time and place" could cure an otherwise complete NTA for purposes of the stop-time rule or any other rule. Not only that, but at no point did the Court even suggest that the Immigration Court lacked jurisdiction before an incomplete NTA was amended to include "time and place" or was otherwise cured by a subsequent NOH.

In accordance with the authority provided herein, Defendant's underlying removal proceeding was not fundamentally unfair. On February 6, 2012, the Government served Defendant with an NTA lacking both a date and time for his removal hearing. On April 29, 2014, however, the Government served Defendant with an NOH providing that the hearing was scheduled for 2:00 PM on May 6, 2014. While the record before the Court is not clear as to where Defendant resided during these two interim years or whether he was detained during this

time, Defendant attended the removal hearing and even waived his right to appeal the outcome of that hearing. The NTA may have been incomplete, but it did not divest the Immigration Court of its jurisdiction. The subsequent NOH cured the apparent defect in the NTA. Because divestment of jurisdiction is Defendant's sole argument pertaining to this prong—and because there is no apparent indication from the record before this Court of any other fundamental unfairness from the proceedings—Defendant's Motion to Dismiss must fail.

      B.      *Defendant Failed to Exhaust Administrative Remedies*

Notwithstanding the fact that Defendant fails to satisfy the "fundamentally unfair" prong of the § 1326(d) test, Defendant also fails to prove that he exhausted any available administrative remedies. Defendant essentially collapses his jurisdictional argument into both the "fundamentally unfair" and exhaustion prongs (*see* Mot. at 6 ("The absence of jurisdiction to conduct removal proceedings rendered the proceedings void such that no exhaustion was necessary.")), so the Court incorporates by reference its analysis as outlined above. Additionally, however, it is worth noting that this Motion—filed almost five years after the Removal Order—is the first challenge to Defendant's removal. Defendant had thirty days to appeal the IJ's removal order to the BIA. *See* 8 C.F.R. §§ 1003.1(b), 1003.38(b). In any event, the Removal Order indicates that Defendant waived his right to appeal (*see* Removal Order at 1), and no allegations of misconduct or invalid waiver were presented, *cf. United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1131 (9th Cir. 2013) ("[W]hen an alien has waived his right to appeal to the BIA, he can nevertheless satisfy § 1326(d)(1) and (d)(2) by showing that his waiver was not considered and intelligent." (internal citation omitted)). Defendant, therefore, fails to prove that he exhausted his administrative remedies. *See United States v. Brown*, 756 F. App'x 140, 142–43 (3d Cir. 2018) (concluding that Defendant failed to satisfy the first and second prongs of

§ 1326(d) because he elected not to appeal his removal order and he waived his right to appeal); *Gamez*, 2019 U.S. Dist. LEXIS 55323, at *13 ("By failing to appeal, defendant did not exhaust his administrative remedies.").[6]

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss is denied. An appropriate order will follow.

Date: 05/31/2019                              */s/ Anne E. Thompson*  
                                              ANNE E. THOMPSON, U.S.D.J.

---

[6] Because failing to carry the burden in regard to any one prong is enough to deny a motion to dismiss, the Court need not entertain whether the removal proceedings improperly deprived Defendant of judicial review pursuant to § 1326(d)(2) or whether he suffered "actual prejudice."